IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| MYLINH M. CRANE, ) | |
| ) | |
| PLAINTIFF, ) | C.A. No. 4:14-CV-1651-PMD-KDW |
| ) | |
| v. ) | |
| ) | |
| STARWOOD HOTELS & RESORTS ) | |
| WORLDWIDE, INC., STARWOOD ) | |
| VACATION OWNERSHIP, INC., ) | **REPORT AND RECOMMENDATION** |
| STARWOOD HOTELS & RESORT ) | |
| MANAGEMENT COMPANY, INC., ) | |
| SVO MYRTLE BEACH, LLC, and ) | |
| SVO MB MANAGEMENT, INC., ) | |
| ) | |
| DEFENDANTS. ) | |
| ) | |

Plaintiff Mylinh Crane ("Crane" or "Plaintiff"), filed this action against Starwood Hotels & Resorts Worldwide, Inc.; Starwood Vacation Ownership, Inc.; Starwood Hotels & Resort Management Company, Inc.; SVO Myrtle Beach, LLC; and SVO MB Management, Inc. (collectively "Defendants"), alleging employment discrimination due to race and gender pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e, *et seq*.; retaliation in violation of Title VII; as well as a state-law claim for promissory estoppel.[1] This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Defendants' Motions to Dismiss. ECF Nos. 9,

---

[1] Plaintiff's Amended Complaint also includes a state-law cause of action for constructive discharge. However, in response to Defendants' Motion to Dismiss, Plaintiff concedes that South Carolina does not recognize constructive discharge as a discrete cause of action. Pl.'s Resp. 5, ECF No. 5. Accordingly, Defendants' Motions to Dismiss should be granted as to the constructive discharge cause of action.

14.[2] Plaintiff filed her response on June 25, 2014, ECF No. 26; Defendants filed a Reply on July 7, 2014, ECF No. 34, and a supplement to that Reply on August 13, 2014, ECF No. 36. A hearing was held on November 21, 2014. Having reviewed the parties' submissions, the applicable law, and oral arguments of counsel, the undersigned recommends that Defendants' Motions to Dismiss, ECF Nos. 9, 14, be granted as to Plaintiff's Title VII and constructive discharge causes of action, and that the court decline to exercise supplemental jurisdiction over the remaining state-law claim of promissory estoppel.

I.     Background

Plaintiff, who formerly worked in sales for Defendants, claims she was discriminated against because she was not promoted despite being assured she would be. Plaintiff began as a sales associate in 2010, selling "vacation ownership" at Defendants' Starwood Broadway Plantation in Myrtle Beach, South Carolina. Am. Compl. ¶ 11. Plaintiff alleges that when a director of sales position became vacant in March of 2012, hiring employee Martin Tolan assured her that she would be appointed to that position, but that she would need to formally apply. Am. Compl. ¶¶ 13-14. Plaintiff served as Interim Director of Sales from March 26, 2012 until January 28, 2013. *Id.* ¶ 17. After Tolan interviewed 76 applicants, he named a white male from outside the company to the director of sales position. *Id.* ¶ 19. Plaintiff avers that she "filed a charge of discrimination against Starwood in November of 2013[,]"[3] and that, as a "direct result" of filing that charge, "Defendants then set about a course of retaliation and harassment

---

[2] Defendants filed a Motion to Dismiss Plaintiff's initial Complaint on May 21, 2014. ECF No. 9. On June 2, 2014, Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint. ECF No. 14. In the second Motion to Dismiss, Defendants crave reference to the arguments in their initial Motion, explaining the second Motion was filed to include two parties that were added to the Amended Complaint. ECF No. 14 at 2 & n.1. Effectively, then, the two Motions were briefed as one Motion.

[3] More detailed discussion regarding the charge follows within.

designed to intimidate [P]laintiff and force [her] to resign her employment." *Id.* ¶¶ 21-22. On February 4, 2014, Plaintiff terminated her employment; she alleges she was constructively discharged. *Id.* ¶ 25.

II.     Applicable Law

    A.  Rule 12(b)(1) and (b)(6)

Defendants move to dismiss the Title VII claims of Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), alleging the court lacks jurisdiction over them because Plaintiff failed to exhaust administrative remedies. A plaintiff always bears the burden of demonstrating that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). When a defendant challenges subject matter jurisdiction pursuant to a Rule 12(b)(1) motion to dismiss, the court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004) (citing cases).

Defendants also seek to dismiss Plaintiff's cause of action for promissory estoppel pursuant to Rule 12(b)(6). A motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts that would support his claim and would entitle him to relief. Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Further, on a motion pursuant to Rule 12(b)(6), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d). When ruling on a

3

motion to dismiss, the court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Nonetheless, the court need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

### B. Title VII Claims: Exhaustion of Administrative Remedies

Before filing suit under Title VII, a plaintiff must exhaust her administrative remedies by bringing a charge with the Equal Employment Opportunity Commission ("EEOC"). 42 U.S.C. § 2000e–5(f)(1); *see Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing 42 U.S.C. § 2000e–5(f)(1)). The filing of an administrative charge "is not simply a formality to be rushed through so that an individual can quickly file his subsequent lawsuit." *Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir. 2005) Rather, "the charge itself serves a vital function in the process of remedying an unlawful employment practice." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013). In particular, "[t]he exhaustion requirement ensures that the employer is put on notice of the alleged violations so that the matter can be resolved out of court if possible." *Miles v. Dell, Inc.*, 429 F.3d 480, 491 (4th Cir. 2005); *see Balas*, 711 F.3d at 406-07 (noting exhaustion of EEOC administrative process "notifies the charged party of the asserted violation" and "brings the charged party before the EEOC and permits effectuation of the [Civil Rights] Act's primary goal, the securing of voluntary compliance with the law") (citations and quotation marks omitted).

Title VII does not explicitly define the term "charge," *see Edelman v. Lynchburg Coll.*, 535 U.S. 106, 112 (2002); however, it does offer guidance about the exhaustion process.[4]

---

[4] With respect to timing, Title VII establishes "two possible limitation periods for filing a discrimination charge with the EEOC." *Jones*, 551 F.3d at 300 (explaining that the basic limitations period is 180 days after the alleged unlawful employment practice, but can be

4

Regarding form, Title VII mandates that a charge be "in writing under oath or affirmation." 42 U.S.C. § 2000e–5(b); *see also* 29 C.F.R. § 1601.9 (establishing that a Title VII charge "shall be in writing and signed and shall be verified"). The EEOC's regulations define "verified" to mean "sworn to or affirmed before a notary public, designated representative of the [EEOC] or other person duly authorized by law to administer oaths and take acknowledgements, or supported by an unsworn declaration in writing under penalty of perjury." 29 C.F.R. § 1601.3. An unverified document that satisfies the other substantive requirements for a charge can be cured by a later-filed charge that is verified, in which case the verified charge relates to the filing date of the unsworn charge. *See* 29 C.F.R. § 1601.12(b); *Edelman*, 535 U.S. at 118 (upholding EEOC's regulation permitting relation back). Although EEOC regulations characterize the failure to verify a charge as a "technical defect," 29 C.F.R. § 1601.12(b), the Fourth Circuit has held that compliance with Title VII's verification requirement is "mandatory," *Balazs v. Liebenthal*, 32 F.3d 151, 156 (4th Cir. 1994). In other words, "failure to comply with [the verification requirement] is fatal to an action seeking relief under Title VII." *Id.*

As to the substance of a charge, Title VII requires that a charge "contain such information and be in such form as the [EEOC] requires." 42 U.S.C. § 2000e–5(b). Pertinent EEOC regulations require that a charge contain the following information: (1) the full name, address, and telephone number of the person making the charge; (2) the full name and address of the

---

extended to 300 days if state law proscribes the alleged employment practice and the charge is first filed with a state deferral agency); *see id.; see also Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 439 (4th Cir. 1998). South Carolina is a "deferral state" in which the 300-day limitations period applies in certain circumstances. The *timely* filing of an administrative charge "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) (emphasis added); *see also Jones*, 551 F.3d at 300 n.2. Here, the parties agree the 300-day limitations period is applicable. *See* Defs.' Mem. 4, ECF No. 9-1; Pl.'s Mem. 2, ECF No. 26.

person against whom the charge is made (if known); (3) a clear and concise statement of the facts, including relevant dates, regarding the alleged unlawful practices; (4) if known, the approximate number of employees of the respondent; and (5) a statement disclosing whether any proceedings regarding the alleged unlawful practices have been commenced before a state or local agency. 29 C.F.R. § 1601.12(a). These specific requirements notwithstanding, the EEOC regulations also contain a catchall clause, which provides that "a charge is sufficient when the [EEOC] receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). In addition to satisfying the EEOC regulations, a filing must "be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee" before it can be deemed a charge. *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (in context of a charge alleging violation of the Age Discrimination in Employment Act of 1967 ("ADEA")).[5]

III.   Analysis

    A.  Title VII Claims of Race and Gender Discrimination

Defendants argue that Plaintiff did not exhaust her administrative remedies as to her Title VII claims because she never filed a perfected verified "Charge of Discrimination" with the EEOC on an EEOC Form 5[6] or any document containing a verified signature. Defendants note

---

[5] Plaintiff relies on *Holowecki* extensively, and the court discusses it more fully within.

[6] Typically, reference to an EEOC "charge" is reference to a "Charge of Discrimination" provided to the employer on an EEOC Form 5 ("Form 5") that has been signed by the employee/claimant "Charging Party." *See generally, Smith v. Ctr. Ford, Inc.*, 71 F. Supp. 2d 530, 539 (E.D. Va. 1999). The Form 5 includes language that, by signing, the Charging Party is declaring under "penalty of perjury" that the Charge is "true and correct." *See id.* Here it is undisputed that Defendants did not receive a signed Form 5 Charge of Discrimination and that Plaintiff never signed one. Rather, Plaintiff argues that the EEOC Intake Questionnaire she completed sufficiently satisfies Title VII's administrative-exhaustion requirements.

Plaintiff's pleading does not "allege the existence of a perfected charge, contend that a charge was timely filed, or otherwise refer to or attach a copy of what [Plaintiff] contends is a timely, perfected charge." Defs.' Mem. 4 n.2, ECF No. 9-1. Defendants attach a "Notice of Charge" form dated November 26, 2013 that they received from the EEOC, argue it—the only notification they ever received from the EEOC regarding a claim by Plaintiff—was not a proper charge and, in any event, was not timely submitted. Defs.' Mem. 2-4, ECF No. 9-1; Notice of Charge, ECF No. 9-2.

In opposing Defendants' Motion to Dismiss her Title VII claims for failure to exhaust administrative remedies, Plaintiff does not dispute that she did not file a verified "Charge of Discrimination" on the EEOC form so labeled (the Form 5). Rather, she attaches to her opposition memorandum a completed EEOC Intake Questionnaire ("Questionnaire") dated November 12, 2013, and submits it is to be considered as her timely submitted "Charge of Discrimination." Pl.'s Mem. 2-3, ECF No. 26 (relying on *Holowecki*, 552 U.S. 389; *Edelman*, 535 U.S. 106); ECF No. 26-1 (completed Questionnaire).

In *Holowecki*, the United States Supreme Court addressed whether an EEOC Intake Questionnaire may constitute a "charge" for purposes of the ADEA, 29 U.S.C. § 621 *et seq*. The Court deferred to the EEOC's position that the regulations' criteria are not exhaustive, meaning that "not all documents that meet the minimal requirements of § 1626.6 are charges." *Holowecki*, 552 U.S. at 397. The Court also adopted the EEOC's position that "the proper test for determining whether a filing is a charge is whether the filing, taken as a whole, should be construed as a request by the employee for the agency to take whatever action is necessary to vindicate her rights." *Id.* at 398. This is sometimes referred to as the EEOC's "objective test."

7

*See id.* at 402 (noting that, in determining whether submission to the EEOC may be considered a charge requires examination "from the standpoint of an objective observer").

In *Edelman*, the Court considered a challenge to the EEOC's regulation that permitted a Title VII charging party to complete a verification after completing an otherwise-timely discrimination charge. The Court noted that Title VII required both that a charge be filed concerning the complained-of conduct, 42 U.S.C. § 2000e-5(e)(1); and that a charging party must swear or affirm that the allegations are true, 42 U.S.C. § 2000e-5(b). 535 U.S. at 109. At issue was whether the EEOC's regulation permitting the later-submitted verification to "relate back" to the timely filed administrative charge, 29 C.F.R. § 1601.12(b), was appropriate. The Court deferred to the EEOC and its regulation, finding its construction of the requirements was appropriate and the charge did not necessarily have to be verified at the same time it was submitted. 535 U.S. at 117-19.[7]

Typically, an employee complaining of discrimination contacts the EEOC and provides it with information to support the allegations of illegal discrimination. After receiving that information through the intake questionnaire and any other information the employee has provided, "the EEOC typically assists the employee with filing a charge." *Balas,* 711 F.3d at 407. The EEOC's assistance may include the drafting of a charge to be forwarded to the employee for signature. *Id.* (citing U.S. Equal Employment Opportunity Comm'n, *The Charge Handling Process*, available at http://www.eeoc.gov/employees/process.cfm (last visited by citing court on Feb. 15, 2013)). The EEOC then sends a notice and copy of the charge to the employer, giving the employer an opportunity to conduct its own investigation and resolve any actions internally. At the same time, the EEOC investigates the charge. *Balas*, 711 F.3d at 407.

---

[7] The *Edelman* Court remanded to the district court the question of whether an appropriate charge had been submitted. 535 U.S. at 119-20.

As noted by the Fourth Circuit, the filing of a charge also "'initiates agency-monitored settlement, the primary way that claims of discrimination are resolved.'" *Id.* (quoting *Chris v. Tenet*, 221 F.3d 648, 653 (4th Cir. 2000)).

In reply, Defendants submit the cases cited by Plaintiff are distinguishable and the Questionnaire does not suffice to exhaust administrative remedies. Defs.' Reply, ECF No. 34. Further, upon receiving the EEOC's file as to Plaintiff's claim pursuant to a Freedom-of-Information-Act ("FOIA") request, Defendants provided that file to the court, and noted the file contains a draft Charge that was never signed by Plaintiff and never provided to Defendants. Defs.' Suppl. Reply, ECF No. 36; EEOC File, ECF No. 36-1. Defendants argue the existence of the unsigned, unverified Form 5 Charge requires dismissal of Plaintiff's Title VII claims for failure to exhaust administrative remedies.

Against this backdrop, the following timeline is relevant to the parties' arguments and inform the court's analysis:

- January 28, 2013:
    - Defendants offer the director-of-sales position to a white male—hence the date of Plaintiff's failure-to-promote claim, *see* Am. Compl. ¶ 19;
- November 12, 2013:
    - Plaintiff completes and signs the EEOC Intake Questionnaire, ECF No. 26-1 (completed four-page Questionnaire and two carry-over sheets completed by Plaintiff);
- November 25, 2013:
    - Deadline by which Plaintiff had to file a charge with the EEOC concerning the January 28, 2013 failure-to-promote claim raised, as it is the first weekday following the 300th day after January 28, 2013;
- November 26, 2013:
    - EEOC Representative Patricia B. Fuller signs the "Notice of Charge of Discrimination" that was sent to Starwood Hotels and Resorts in Stamford, Connecticut. ECF No. 9-2. This EEOC "Form 131" is signed by Fuller on behalf of the EEOC; there is no blank for signature by the Charging Party. This Notice of Charge indicates that "[n]o action is required by you at this time," and that "[a]

9

> perfected charge (EEOC Form 5) will be mailed to you once it has been received from the Charging Party." *Id.*

- December 9, 2013:
    - Date of letter and draft Form 5 mailed to Plaintiff by EEOC. ECF No. 36-1 at 7-9;[8]
- January 28, 2014:[9]
    - Date of right-to-sue letter from EEOC mailed to Plaintiff. ECF No. 36-1 at 6. Indicates that, "[b]ased on its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge[,]" *id.*;
- February 4, 2014:
    - Date Plaintiff "was constructively discharged and terminated her employment[,]" Am. Compl. ¶ 25;
- April 24, 2014:
    - Date Plaintiff filed the Complaint in this matter.

In this case, Plaintiff argues that the *Holowecki* objective test, when applied to her Questionnaire, requires a finding that Plaintiff appropriately exhausted administrative remedies. She submits that, as in *Holowecki*, the Questionnaire she completed, when considered as a whole, should be considered to have exhausted administrative remedies because in it she asks that the EEOC take action to vindicate her rights. As further support for her argument, Plaintiff looks to the Court's 2002 decision in *Edelman*, citing it for the proposition that the Court "reject[ed] the argument that a charge is not a charge until the filer satisfies Title VII's oath or affirmation requirement[.]" Pl.'s Mem. 3.

---

[8] The unsigned Form 5 Charge was submitted to the court along with the other information Defendants received from the EEOC pursuant to their FOIA request. The only document in the provided EEOC file signed by or sent from Plaintiff is the Questionnaire. *See* ECF No. 36-1. The file does not contain a copy of a signed Form 5 Charge, nor does it contain anything from Plaintiff to the EEOC other than the completed Questionnaire and its attached pages. *See id.* at 12-16.

[9] Although the right-to-sue letter is dated January 28, **2013**, that was likely a scrivener's error by the EEOC, and the correct date would be January 28, 2014. *See* Am. Compl. ¶ 10. In any event, the timeliness of Plaintiff's filing her Complaint is not in dispute.

In considering Plaintiff's argument, the following information regarding the Questionnaire, ECF No. 26-1, is relevant:

- The Questionnaire indicates Plaintiff experienced race and gender discrimination because she was not promoted to a director of sales position, but that the position was awarded to a white male from outside the company on January 28, 2013.
- Language at the top of the Questionnaire's first page reminds the claimant that "a charge of employment discrimination must be filed within the time limits imposed by law," ECF No. 26-1 at 1;
- Language on the fourth (and last) page of the Questionnaire again reminds claimant that a charge must be filed within a certain number of days and notes in bold: "If you do not file a charge of discrimination within the time limits, you will lose your rights. If you would like more information before filing a charge or you have concerns about the EEOC's notifying the employer . . . about your charge, you may wish to check Box 1. If you want to file a charge, you should check Box 2." ECF No. 26-1 at 4.
- Plaintiff checked Box 2, which provides in pertinent part: "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above. I understand that the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name." ECF No. 26-1 at 4.
- Plaintiff signed and dated the Questionnaire on November 12, 2013. The signature is not verified, nor does it include any language indicating that the signor is signing under penalty of perjury. ECF No. 26-1 at 4.
- A footnote below Plaintiff's signature provides in part as follows: "PRINCIPAL PURPOSE. The purpose of this questionnaire is to solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over those claims, and provide charge filing counseling, as appropriate. Consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(c), this questionnaire may serve as a charge if it meets the elements of a charge." ECF No. 26-1 at 4.

Plaintiff submits that the completed Questionnaire should be considered a "charge" for exhaustion purposes because it "satisfies Title 29 C.F.R. § 1626.3[,] which states 'charge shall mean a statement filed with the [EEOC] which alleges that the named prospective defendant has engaged in or is about to engage in acts in violation of the Act.'" Pl.'s Mem. 3 (quoting 29 C.F.R. 1626.3). As an initial matter, the court notes that the regulation referenced by Plaintiff concerns the EEOC's procedures pursuant to the ADEA, not Title VII. The *Holowecki* Court offered a "cautionary preface" against conflating the requisite administrative procedures of the various employment-related statutory and regulatory schemes, noting that "the EEOC

11

enforcement mechanisms and statutory waiting periods for ADEA claims differ in some respects from those pertaining to other statutes the EEOC enforces, such as Title VII . . . " 552 U.S. at 393. "While there may be areas of common definition, employees and their counsel must be careful not to apply rules applicable under one statute to a different statute without careful and critical examination. This is so even if the EEOC forms and the same definition of charge apply in more than one type of discrimination case." *Id.* (citation omitted). The Court's cautions are well-taken.

The court will also consider Plaintiff's argument based on the Title VII regulations concerning a charge. The EEOC's regulations regarding what an ADEA "charge" is required to contain are similar in some respects to those set out above regarding a Title VII charge. *See* 29 C.F.R. §§ 1626.8(a)-(b) (establishing that an ADEA charge "should contain" five specific types of information, but then qualifying these requirements by stating that a charge is "sufficient" if it meets the requirements of Section 1626.6, i.e., if it is "in writing and . . . name[s] the prospective respondent and . . . generally allege[s] the discriminatory act(s)"). Significantly, however, the ADEA's administrative-remedy requirements do not require that a charge be verified. *Cf. Diez v. Minn. Min. and Mfg. Co.*, 88 F.3d 672, 676 (8th Cir. 1996) ("Unlike Title VII, the ADEA does not require that a charge be verified.").

Plaintiff does not and cannot argue the record contains any verified signature on a document that might, under appropriate circumstances, be considered a "Charge of Discrimination." For purposes of analysis, the court accepts, *arguendo*, that, by checking "Box 2," Plaintiff adequately satisfied a portion of the objective test set out in *Holowecki* in that she expressed her request that seeks to have the EEOC take action against her employer. Nonetheless, this expression of a desire for EEOC action is not sufficient to save Plaintiff's Title

VII claims from dismissal. Here, Plaintiff never submitted any document to the EEOC subsequent to the Questionnaire. Accordingly, she has not satisfied the plain Title VII requirement that a charge must be verified. 42 U.S.C. § 2000e–5(b); *see also* 29 C.F.R. § 1601.9; *Balazs*, 32 F.3d at 156 (holding Title VII's verification requirement is mandatory). Although Plaintiff signed the Questionnaire, it is undisputed that that signature is unverified. *See* ECF No. 26-1 at 4. As the *Edelman* decision and the EEOC's regulations permit, it is possible for a later-filed formal charge to relate back to cure the deficiency of an unverified signature. *Edelman*, 535 U.S. at 118; 29 C.F.R. § 1601.12(b); *see, e.g., Dixon v. Shasta Beverages, Inc.*, No. WDQ–12–0569, 2012 WL 4774808, at *4 (D. Md. Oct. 5, 2012) (although plaintiff did not file a sworn, formal charge until after the limitations period expired, that charge was deemed to relate back to a timely filed but unsworn intake questionnaire that satisfied *Holowecki*).

Here, however, Plaintiff does not contend that she filed any additional documents with the EEOC, verified or otherwise, after submitting her intake questionnaire on November 12, 2013. Further, although she received a Form 5 for her verified signature, she never signed that document and never returned it to the EEOC, nor did she contact the EEOC regarding filing a Charge. *Cf. Edelman*, 535 U.S. at 113 (noting Title VII's verification requirement has the "object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by oath subject to liability for perjury."); *see Merchant v. Prince George's Cnty., Md.*, 948 F. Supp. 2d 515, 522 (D. Md. 2013) (finding even if plaintiff's completion of intake questionnaire were considered request for remedial action pursuant to *Holowecki*, plaintiff failed to exhaust administrative remedies because he never submitted a "charge" or any additional signed documents to EEOC and did not satisfy Title VII's verification requirement); *see generally Boyd v. Angelica Textile Servs., Inc.*,

13

C/A No. 3:10-872-JFA-PJG, 2011 WL 4368559, at *3 (D.S.C. June 9, 2011) (noting questionnaire filed with state agency could not be considered a Title VII "charge" because, *inter alia*, it did not contain the required verified signature); (Report and Recommendation adopted in 2011 WL 4368550 (D.S.C. Sept. 19, 2011). Thus, there is no basis for concluding that Plaintiff's Questionnaire satisfies Title VII's verification requirement; dismissal of Plaintiff's Title VII claims is recommended.

This recommendation is further supported by the recent decision of the Fourth Circuit Court of Appeals in *Balas v. Huntington Ingalls Industries*, 711 F.3d 401. In that case, the plaintiff argued the district court erred by considering only her amended EEOC charge and not her intake questionnaire and other correspondence sent to the EEOC in deciding the scope of her charge. 711 F.3d at 406-07. The Fourth Circuit disagreed, finding the district court appropriately looked only to the charge filed with the EEOC. *Id.* at 408. The content of plaintiff's intake questionnaire and letters sent to the EEOC, submitted prior to the charge provided to the defendant employer, would not be considered by the court. "Given that Balas's employer was never apprised of the contents of her letters (nor could she expect it to have been), the point at which they were written makes no difference for the goals of putting her employer on notice or encouraging conciliation." *Id.* The court noted that if charging parties determined that the initial charge did not read as intended, the charging parties' recourse was to file an amended charge with the EEOC. *Id.* To find otherwise would "contraven[e] the purposes of Title VII." *Id.* Balas also argued she should not have been penalized by the EEOC's "negligence" in not sending the questionnaire and letters to her employer. *Id.* The court dismissed that argument, finding no authority "requiring the EEOC to undertake such an action or providing the EEOC with the

14

discretion to do so." *Id.* Further, the court "declined to impose such an obligation upon the EEOC." *Id.*

Here, the situation is even more straightforward. No charge was filed. The EEOC was under no duty to provide Defendants with a copy of Plaintiff's completed Questionnaire. As in *Balas*, Plaintiff's claims raised in her Questionnaire are outside the court's jurisdiction and cannot be considered. Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies.[10]

### B. Title VII Claim of Retaliation

Plaintiff's Amended Complaint also includes a cause of action for retaliation under Title VII. She avers she was constructively discharged on February 4, 2014, and that Defendants retaliated against her as a result of her bringing a claim of discrimination.[11] At the hearing, Plaintiff's counsel conceded that, because her retaliation claim was derivative of her Title VII discrimination claim, the retaliation claim would also fail if the court determined it was without jurisdiction to consider her Title VII claims. As the undersigned recommends a finding that Plaintiff's Title VII discrimination claims be dismissed for failure to exhaust administrative remedies, it is further recommended that Defendants' Rule 12(b)(1) motions be granted as to Plaintiff's retaliation claim as well.

---

[10] Plaintiff does not argue any equitable doctrine excuses this noncompliance. In any event, unlike timeliness requirements, noncompliance with exhaustion requirements cannot be excused through equity. *See Balazs*, 32 F.3d at 154-56. Further, any verification submitted at this juncture could not be considered to relate back and cure the verification deficiency. As explained in *Balazs*, verified charges potentially could be submitted to the EEOC to amend deficient charges only up to the time a right-to-sue letter is issued. 32 F.3d at 157 (construing 29 C.F.R. § 1601.12(b) regarding relation back of verified signatures and finding verification requirement could not be satisfied by amendment submitted after right-to-sue letter had been issued, federal complaint had been filed, and motion to dismiss served by defendants).

[11] In her written response to Defendants' Motion to Dismiss, Plaintiff seemed to argue that the "continuing violation" doctrine made her retaliation claim viable. Pl.'s Mem. 3. At the hearing, Plaintiff's counsel noted the continuing violation doctrine was inapplicable.

C.  State-Law Claim of Promissory Estoppel

If the court accepts this Report and Recommendation, the only claims within the court's original jurisdiction will be dismissed. *See* Am. Compl. ¶ 9 (noting jurisdiction based on 28 U.S.C. § 1331 and that "pendent jurisdiction" permits the court to hear and decide claims based on South Carolina law). Without Plaintiff's Title VII claims, Plaintiff's sole remaining cause of action—a state law claim for promissory estoppel—is based on the court's supplemental jurisdiction. Section 1367(c)(3) of Title 28 of the United States Code provides that the district courts "may decline to exercise supplemental jurisdiction [as to claims forming the same case or controversy as those within the court's original jurisdiction] if the district court has dismissed all claims over which it has original jurisdiction[.]" Trial courts "enjoy wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." *Shanaghan v. Cahill,* 58 F.3d 106, 110 (4th Cir. 1995) (district court did not abuse its discretion in declining to retain jurisdiction over the state law claims). *See also, e.g., United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726-27 (1966); *Wauben v. Protega (USA), Inc.*, No. 2:05-2780-PMD-RSC, 2007 WL 775614, at *14 (D.S.C. Mar. 9, 2007) (declining to exercise supplemental jurisdiction over state-law claims upon granting summary judgment as to Title VII claim).

Therefore, the undersigned recommends the court exercise its discretion to decline supplemental jurisdiction over Plaintiff's state-law claim for promissory estoppel and dismiss that claim without prejudice to its being filed in state court, thus ending the action here. Acceptance of this portion of this Report and Recommendation makes Defendants' Rule 12(b)(6) motions to dismiss the promissory estoppel claim moot.

IV. Conclusion and Recommendation

For the reasons set forth herein, it is recommended that Defendants' Motions to Dismiss (ECF Nos. 9, 14) as to Plaintiff's Title VII and constructive discharge claims be *granted* and that the remaining state-law claim be dismissed without prejudice to its being brought in state court.

IT IS SO RECOMMENDED.

December 2, 2014  
Florence, South Carolina

Kaymani D. West  
United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**